UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH ANN KRAVAT,

        Plaintiff,                CIVIL ACTION NO. 16-cv-11159

        v.                           MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11] AND**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiff Elizabeth Ann Kravat seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 14). With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 10.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

**I.     PROCEDURAL HISTORY**

Plaintiff protectively filed an application for Supplemental Security Income on October 15, 2013, alleging that she has been disabled since February 28, 2012, due to "severe depression, severe anxiety, arthritis, chondromalacia, [and] obesity." (TR 88, 172–76.) The Social Security

Administration denied Plaintiff's claim on March 18, 2011, and Plaintiff requested a *de novo* hearing. (TR 88–103, 104–06.) On April 27, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Regina Sobrino. (TR 53–86.) In a June 19, 2015 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a) and was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 36–47.) The Appeals Council declined to review the ALJ's decision (TR 1–7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## II. HEARING TESTIMONY AND MEDICAL EVIDENCE

Defendant (docket no. 14 at 4–6) and the ALJ (TR 36–46) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Plaintiff also discusses the facts relevant to her arguments. (Docket no. 11 at 5–10.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 11, 2013, and that Plaintiff suffered from the following severe impairments: degenerative joint disease/chondromalacia; plantar fasciitis; carpal tunnel syndrome; asthma; headache disorder; obesity; affective disorder; and anxiety disorder. (TR 33.)

The ALJ also determined that Plaintiff's abscesses (or cysts) were non-severe impairments. (*Id.*) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 34.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), with the following additional limitations: the opportunity to alternate position for up to 5 minutes approximately every 20 minutes; no climbing of ladders, ropes, scaffolds, or stairs; occasional stooping and balancing; no kneeling, crouching, or crawling; no overhead reaching, and no more than frequent reaching in other directions; frequent handling, fingering, and feeling. She should be able to wear hand braces while working. There should be no work around hazards such as unprotected elevations or near dangerous, moving machinery; no exposure to vibration; no use of foot or leg controls; and no concentrated exposure to respiratory irritants. She is limited to simple, routine, 1- and 2-step tasks not done at a production rate pace (e.g., no assembly line work); with minor changes in the work setting; no work that requires interaction with the public; occasional contact with co-workers; and routine supervision.

(TR 36.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy, including an administrative support worker, a hand packer, and a sorter. (TR 46.) Therefore, the ALJ found that Plaintiff was not disabled at any time from October 11, 2013, through the date of the decision. (TR 46–47.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits or remanded under sentence four because, Plaintiff argues, "the Administrative Law Judge's residual functional capacity assessment is not supported by substantial evidence of record, and does not take into consideration all of the Plaintiff's impairments, both severe and non-severe, as required at step four in the sequential process." (Docket no. 11 at 6.) The Court disagrees.

The ALJ carefully detailed a significant number of treatment notes and other medical evidence which supports Plaintiff's ability to do a limited range of sedentary work:

> As discussed, most clinical examinations and objective studies revealed mildly abnormal to normal results. In addition, the psychological records or evidence show that the claimant's mental health status improved and stabilized with treatment and medications. Specifically, the claimant's treating therapist at Hurley Mental Health indicated on December 11, 2012: "[Claimant] reports meds have been very helpful – she's much happier". (1F/6) An imaging scan of the left knee was performed on January 14, 2013, and showed "Normal left knee radiography." (3F/82) On March 12, 2013, [a] neurological examination revealed "Symmetric reflexes normal strength and tone. Good co-ordination, Normal gait." (3F/55) On examination, the claimant had a "Normal psychiatric evaluation. Normal interpersonal interactions with appropriate affect and demeanor." (3F/56) An imaging scan of the chest on March 13, 2013, showed "Normal chest radiography." (3F/80; 5F/24) It was noted on September 20, 2013, "Since the pain is most increased after resting or sleeping, I have encouraged good stretching to be performed prior to beginning any type of walking activity. Use of anti-inflammatory medication is to be continued. We discussed the importance of good shoe gear along with arch supports. Hopefully the patient will do well with care." (4F/2; 11F/23) Imaging scans of the lumbar and thoracic spines on January 7, 2013, revealed, "Normal examination" and "Negative study", respectively. (14F/55, 56)

(TR 43–44.) The ALJ also discussed how an April 1, 2014, note from Plaintiff's podiatrist indicates that Plaintiff's heels were "doing much better"; a May 2014 imaging scan of the lumbar spine shows no recent degeneration; a July 2014 note states that Plaintiff's headaches were "getting better"; August 2014 electrodiagnostic testing showed only "mild median

6

mononeuropathy at the wrist," with "no evidence of right or left ulnar mononeuropathy at the elbow, cervical radiculopathy, or brachial plexopathy." (TR 44.)

As for opinion evidence, the ALJ gave "significant weight" to the opinion of Blaine Pinaire, Ph.D., who found that despite Plaintiff's "moderate limitations" in certain areas of her mental functioning, Plaintiff is "able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in a routine work setting." (TR 45, 96.) Dr. Pinaire further opined, as the ALJ emphasized, that "[w]hile there are some issues with concentration, there is sufficient concentration to perform simple 1-2 [step] tasks, all on a routine and regular basis." (*Id.*) The ALJ also gave "little weight," but not *no weight*, to the opinions of the consultative examiner, Matthew Dickson, Ph.D, Licensed Psychologist, and the State agency physician, B.D. Choi, M.D. (TR 45.) Dr. Dickson opined that Plaintiff had only a "mild" impairment in her abilities to "respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace," and that she was "not overtly impaired" in her mental abilities "to understand, attend to, remember, and carry out instructions of work-related behaviors." (TR 399.) Dr. Choi found that Plaintiff could perform a reduced range of light work, which includes standing or walking up to six hours a day, and lifting up to 20 pounds occasionally. (TR 93.) The ALJ discounted their opinions because she found that the evidence established Plaintiff was more limited than they had each opined. (TR 44–45.)

The Court finds that this evidence provides sufficient support—substantial evidence—for the ALJ's RFC assessment, and that therefore Plaintiff's Motion should be denied. The Court will nevertheless also address the specific errors Plaintiff alleges in her Motion.

First, Plaintiff appears to argue that the ALJ erred in finding that Plaintiff's abscesses/cysts were not a severe impairment. (Docket no. 11 at 6.) A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff points out that she has endured these cysts for a number of years, and argues that "[t]he medical evidence supports [her] testimony that the abscess on her buttock is aggravated by walking, bending, lifting and direct pressure from sitting." (*Id.* at 6–7.) This argument fails.

First, Plaintiff fails to identify how these cysts would actually affect her RFC, even if they were considered a severe impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (Plaintiff bears the burden of proof through step 4). Second, the ALJ explicitly discussed the cysts in her decision, noting that as of October 2013, Plaintiff's surgeon (who performed a pilonidal cystectomy on Plaintiff) cleared her to resume her normal activities. (TR 33.) After another surgery performed over a year later, Plaintiff's doctor noted that Plaintiff was "[d]oing very well [status-post] excision of an infected urachal cyst," that "[t]he area within the umbilicus has healed very well with an excellent cosmetic result," and that Plaintiff "may follow up [as needed]." (TR 671.) The ALJ's conclusion that Plaintiff's cysts have "caused no more than minimal functional limitations" is supported by this substantial evidence, and Plaintiff has failed to meet her burden of proving the existence and severity of any limitations arising from her cysts.

Plaintiff next argues that the ALJ's finding that Plaintiff must have the ability to "alternate position for up to 5 minutes approximately every 20 minutes" is unclear, and does not sufficiently account for Plaintiff's "back condition." (Docket no. 11 at 7.) This argument also fails. The Court interprets this limitation as allowing Plaintiff to sit for 5 minutes every 20

minutes (if she is working in a standing position), and to stand for 5 minutes every 20 minutes (if she is working in a seated position). The limitation does not contemplate that Plaintiff will be "off task" during that five minute period. In support of her argument that the ALJ did not sufficiently account for her back problems, Plaintiff specifically argues that the ALJ "did not reference the CT scan of the lumbar spine performed on 5/10/14." The Court reviewed the pages cited by Plaintiff, and found a note describing the results of a "two view examination of the lumbar spine" performed on May 27, 2014. (TR 721.) The note describes how Plaintiff's "[v]ertebral body heights and intervertebral disc spaces are well maintained," and she had no "acute fracture or dislocation involving the lumbar spine." (*Id.*) It also states that the "[o]verall appearance of the lumbar spine is unchanged from prior examination of 1-7-14." (*Id.*) The ALJ considered and weighed this evidence, and the Court finds no error with the ALJ's failure to assign any additional limitations based upon Plaintiff's "back issue." (TR 41–42.) The Court also notes that the ALJ's failure to specifically reference the May 10, 2014, CT scan also does not constitute reversible error. There is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citation omitted).

Plaintiff next argues that the ALJ did not "fairly evaluate the Plaintiff's testimony as it relates to her foot complaints, and the medical [evidence] supporting those complaints." (Docket no. 11 at 7.) Specifically, Plaintiff argues that the evidence supports a finding that Plaintiff is required to elevate her legs during normal work hours, a restriction which the Vocational Expert testified would be work-preclusive. (*Id.*; *see also* TR 79.) The only evidence which Plaintiff cites that supports a need for elevating her feet is her own testimony, the credibility of which the ALJ discounted. (*See* TR 38.) The ALJ considered all of the other evidence Plaintiff cites

9

concerning her "foot complaints," then found that Plaintiff's plantar fasciitis was a severe impairment and limited Plaintiff to sedentary work that requires her to stand or walk less than two hours out of an eight-hour workday, and that never requires Plaintiff to kneel, climb, crouch, crawl, or use foot or leg controls. (TR 45.) It is also worth noting that the ALJ discussed how Plaintiff's treatment of her feet was limited to injections, and a recommendation that Plaintiff stretch her feet, take non-steroidal anti-inflammatory medication, and use "good shoe gear." (TR 41.) The ALJ also specifically discussed an April 2014 note from Plaintiff's podiatrist stating that Plaintiff's "'heels are doing much better . . . She will do well with care.'" (TR 41 (citing TR 560).)

Plaintiff next argues that "[b]ecause of the combined effects of [her] impairments, she would have more than one unscheduled absence per month and she would be off task 20% or more of the workday," which, she argues, would be work-preclusive. (Docket no. 11 at 8.) In support of her argument, Plaintiff cites records from Mouaz Sbei, M.D., who treated Plaintiff for her headaches. Specifically, on January 27, 2014, Dr. Sbei noted Plaintiff's complaints that her headaches can be "functionally disabling at least 4-5 times a month and lasting 2-3 days." (TR 408.) However, once again, the ALJ expressly discussed this evidence, but she credited later notes from Dr. Sbei which state that "'[o]verall headache is getting better.'" (TR 42 (citing TR 404).) Plaintiff argues that this note "does not describe [Plaintiff's] ability to function" (docket no. 11 at 8), but it clearly implies an improvement from the prior note which simply stated that the headaches were "functionally disabling." Moreover, it is the role of the ALJ, not the Court, to weigh the evidence. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). The Court finds the ALJ properly weighed the evidence concerning Plaintiff's headaches.

Plaintiff next challenges the weight the ALJ assigned to the medical opinions. First, she argues the ALJ erred by not crediting the opinion of Gerald Smith, Plaintiff's counselor. (Docket no. 11 at 8.) However, as Defendant points out, Mr. Smith is not "an acceptable medical source," and therefore the ALJ was not required to accord his opinion any special weight. *Taylor v. Comm'r of Soc. Sec.*, No. 11-46, 2012 WL 1029299, at *5 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)). Social Security Ruling 06-03p states that there are certain factors an ALJ may weigh when reviewing opinions from non-acceptable medical sources, such as the nature and extent of the relationship between the source and the individual, how well the source explains the opinion, the source's specialty or area of expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion. 2006 WL 2329939, at *4–5.

Mr. Smith opined that Plaintiff had "marked" limitations in her abilities to "understand and remember complex instructions," "carry out complex instructions," and "make judgments on complex work-related decisions," but that she had only "mild" restrictions in her abilities to follow simple instructions and make "simple work-related decisions." (TR 410.) He also opined that she had marked restrictions in her abilities to "interact appropriately" with the public, supervisors, and co-workers. (TR 411.) The ALJ assigned "partial weight" to Mr. Smith's opinion, "to the extent it is consistent with the conclusion that the claimant has moderate difficulties with social functioning and in maintaining concentration, persistence or pace." (TR 45.) In other words, the ALJ discounted the portion of the Mr. Smith's opinion which was inconsistent with the other evidence of record, including April 2014 notes from Dr. Sbei which provide that, while Plaintiff's mood was anxious, her behavior was "calm and cooperative," her

insight was "good," her memory was "intact," and her "attention/concentration appear[ed] appropriate." (TR 44.) Because the ALJ was not required to accord Mr. Smith's opinion any special weight, and because he considered at least one of the relevant factors, Plaintiff's argument with regard to the ALJ's assessment of Mr. Smith's opinion fails.[1]

Plaintiff next challenges the ALJ's decision to give "significant weight" to the opinion of the State agency psychological consultant, Dr. Pinaire.[2] (Docket no. 11 at 9.) Plaintiff argues that Dr. Pinaire's opinion was based on an incomplete review of the record, as "the bulk of the ne[w] psychological records" were submitted after Dr. Pinaire's review. (*Id.*) Plaintiff does not, however, identify any particular records that the ALJ failed to consider which could have affected Dr. Pinaire's assessment,[3] nor does Plaintiff argue that the ALJ erred by not seeking an updated opinion from the State agency. Moreover, as Defendant points out, "[t]here is no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011) (discussing SSR 96-6p). Instead, before an ALJ can give significant weight to the opinion of a non-examining source, the ALJ must give "some indication" that she "at least considered" the facts contained within the more recent medical records. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (internal quotation marks and citation omitted). Here, the ALJ discussed the more recent psychological records in detail, noting Plaintiff's treatment at Hurley Mental Health on March 18, 2014, and April 15, 2014. (TR 41.) The ALJ

---

[1] The Court also notes that the RFC, which limits Plaintiff to "simple, routine, 1- and 2-step tasks not done at a production rate (e.g., no assembly line work); with minor changes in the work setting; no work that requires interaction with the public; occasional contact with co-workers; and routine supervision," is fairly consistent with Mr. Smith's opinion. (TR 36 (RFC finding).)

[3] Indeed, the one record Plaintiff mentions (the GAF score assigned by Dr. McAllister which is discussed in greater detail below), was rendered in October/November 2012, and therefore was available to Dr. Pinaire.

also specifically discussed a quarterly review note from Hurley Mental Health recorded on June 18, 2014, which states that "'[Plaintiff] was seen in therapy 1 times [sic] this quarter.' (10F/45, 46, 47; 19F/31–33) 'An outreach letter has been sent to [her] regarding future appointments.' (10F/46, 47; 19F/31–33)." (TR 42.) A note in September 2014 similarly provides that Plaintiff "only came in briefly and did not follow up with psychiatry or therapy." (*See* TR 42.) The ALJ discusses how, when Plaintiff returned to Hurley Health in January 2015, her symptoms had improved since the April 2014 visit. (*Id.* (GAF score up from 41–50 to 51–60.).) And, although the ALJ does not specifically mention the fact that Dr. Pinaire's review did not include a review of these records, the ALJ clearly acknowledges the fact that Dr. Pinaire's review was conducted in December 2013, and also acknowledges the dates of Plaintiff's more recent mental health treatment.

Plaintiff also challenges the fact that the ALJ did not adopt the GAF score of 50 assigned by Plaintiff's treating psychiatrist, Dr. McAllister, in October and November 2012. (Docket no. 11 at 9.) Plaintiff briefly argues that the decision by the ALJ to discount the GAF scores violates the treating physician rule. (*Id.*) However, Plaintiff points to no opinion given by Dr. McAllister other than the GAF score, and the Sixth Circuit has held that an ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Moreover, the ALJ clearly explained that she discounted the GAF score of 50 because it was "inconsistent with the mental status examination findings reported." (TR 38.) Specifically, the ALJ noted:

> In October 2012, the claimant had normal motor activity, normal interview behavior, normal thought control and process, normal orientation, normal

> judgment and average intellect. Although her affect was moderately anxious and moderately depressed, and there were moderate problems with concentration, these were not described as showing "serious" functional impairment. (1F17) Mental status examination findings in November 2012 showed that the claimant's mood was anxious and dysphoric, her affect was flat, and she demonstrated decreased attention and concentration. However, she was cooperative; her psychomotor behavior was unremarkable, there were no perceptual disturbances, her thought process was logical, her thought content was appropriate, she was fully oriented, her memory was intact, and her insight was good. These findings are indicative of moderate impairment of functioning. (1F/10–11)

(TR 39.) Finally, just a month after this GAF score was assigned, Mr. Smith (Plaintiff's counselor), wrote that, "[Plaintiff] reports meds have been very helpful—she's much happier." (TR 39 (citing TR 251).) The Court finds no error in the ALJ's decision not to credit the GAF score assigned by Dr. McAllister.

Plaintiff's last argument is that that the ALJ's "evaluation of the Plaintiff's bilateral carpal tunnel syndrome is inconsistent and not supported by substantial medical evidence." (Docket no. 11 at 10.) Plaintiff acknowledges that the extremely restrictive RFC accounts for Plaintiff's carpal tunnel syndrome by limiting Plaintiff to work that allows her to wear hand braces and does not expose her to any vibrations, but she argues that the ALJ should have assigned greater restrictions with regard to handling, fingering, and feeling. (*Id.*) Plaintiff argues that the medical records show that Plaintiff's hands "experience numbness, tingling and weakness after using them for only 5–10 minutes." (*Id.*) However, the records she relies on mostly reflect her own subjective complaints about her carpal tunnel syndrome. (TR 196–203 (adult function report); TR 404 (Plaintiff "complains of arm myalgia and patchy numbess and tingling mostly in her hands"); TR 687 ("Patient states [she] has had bilateral CTS in the past . . .").) The ALJ discounted the credibility of Plaintiff's complaints, and the ALJ's obligation is to determine Plaintiff's RFC based on the evidence he finds credible. The one record Plaintiff cites

that does reflect objective medical findings concerning Plaintiff's carpal tunnel syndrome is an August 2014 nerve conduction study, which the ALJ discusses in her decision. (TR 44 (discussing TR 403).) As the ALJ notes, this study revealed "bilateral mild median mononeuropathy at the wrist (carpal tunnel syndrome)," with "no evidence of right or left ulnar mononeuropathy at the elbow, cervical radiculopathy, or brachial plexopathy." (*Id.*) The Court finds no error with the ALJ's evaluation of the evidence concerning Plaintiff's carpal tunnel syndrome.

In sum, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and therefore it should not be disturbed.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [11] is **DENIED**, and Defendant's Motion for Summary Judgment [14] is **GRANTED**.

Dated: August 31, 2017　　　　s/ Mona K. Majzoub
　　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated:  August 31, 2017　　　　s/ Leanne Hosking
　　　　　　　　　　　　　　　Case Manager Generalist